IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| IN THE MATTER OF: | ) | CASE NO. BK09-82518-TJM |
| | ) | |
| NEGUS-SONS, INC., | ) | CH. 11 |
| | ) | |
| Debtor. | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on November 5, 2009, on the debtor's motion to use cash collateral (Fil. #50) and an amended motion to use cash collateral (Fil. #52). Objections were filed by Wells Fargo Equipment Finance, Inc. (Fil. #58); the United States of America on behalf of the Internal Revenue Service (Fil. #59); Mutual of Omaha Bank (Fil. #60); and International Fidelity Insurance Company (Fil. #62). David Hicks appeared on behalf of the debtor; David Skalka appeared on behalf of Wells Fargo Equipment Finance, Inc.; Douglas Quinn appeared on behalf of Mutual of Omaha Bank; Laurie Barrett appeared on behalf of the United States of America on behalf of the Internal Revenue Service; James Overcash appeared on behalf of International Fidelity Insurance Company; and Maynard Weinberg appeared on behalf of various employee benefit entities.

The debtor is in the commercial earthmoving business. On many of its contract projects, it acts as a general contractor. On other projects, pre-petition, it used an affiliated company, Netal, Inc., in the capacity of subcontractor to other general contractors. Both companies are owned by the same individuals. Pre-bankruptcy, the owners of the businesses treated them, for administrative and financial reporting purposes, as one entity. They submitted consolidated financial statements to their lenders and each company guaranteed the financial obligations of the other. They used all of the equipment, which is apparently owned by the debtor, and they used some or all of the employees of the debtor to complete contracts entered into by each company. It is unclear whether they filed consolidated income tax returns. It is clear, though, that they maintained separate bank accounts because, as of this week, the Internal Revenue Service levied upon one of the bank accounts of Netal, Inc., in the amount of $33,000.00 to be applied against the outstanding employment tax obligation of more than $200,000.00.

The debtor filed this Chapter 11 case on September 23, 2009. Netal, Inc., as of the time of this hearing, had not filed a bankruptcy petition. It did file a Chapter 11 petition later in the day on November 5, 2009. Negus-Sons, Inc., has filed a motion to consolidate, which motion has been noticed to all parties with a resistance date of November 25, 2009. However, the motion includes an incorrect filing number for the Netal, Inc., case.

Following the filing of the petition, the debtor continued to operate in what its management apparently considered the ordinary course of business. Employees worked on the jobs, payroll was made, fuel was paid, etc. The post-petition expenditure was in excess of $100,000.00. Those funds are identified as cash collateral under the Bankruptcy Code because of the pre-petition liens held by

Mutual of Omaha Bank, the Internal Revenue Service, and perhaps the bonding company, International Fidelity Insurance Company.

Eventually, Mutual of Omaha Bank became aware of the unapproved use of cash collateral. It first wrote to counsel for the debtor demanding that the use of cash collateral cease, but when it did not, it filed a motion requesting the court to prohibit the use of cash collateral. A hearing was held on that motion, and the court prohibited the use of cash collateral and suggested that if the debtor filed a motion for use of cash collateral, an expedited hearing could be held.

The debtor did file a motion for use of cash collateral and an expedited hearing was held on November 5, 2009.

The evidence presented at the original hearing on the motion to prohibit use of cash collateral and at the final hearing on the motion to use cash collateral on November 5, 2009, is that Mutual of Omaha Bank is the holder of two notes in the total principal sum in excess of $600,000.00 plus interest since July 30, 2009. Those notes are secured by a security agreement which includes a security interest in most of the debtor's assets, including all contract rights, assignments, and accounts receivable. The notes are cross-collateralized. There is some dispute over whether the security agreements are perfected because of a termination statement filed with the office of the Nebraska Secretary of State. However, for purposes of this matter, whether Mutual of Omaha Bank's security interest is perfected is irrelevant. It has an interest in cash collateral at least to the extent of $600,000.00. Only its priority is in question and that does not need to be resolved in order to rule on the cash collateral motion.

The Internal Revenue Service has assessed an amount in excess of $500,000.00 against the debtor for pre-petition employment tax delinquencies. That assessment became a lien against the assets of the debtor prior to the bankruptcy petition being filed. The Internal Revenue Service, therefore, has an interest in the cash collateral to the extent of at least $500,000.00. The IRS has also assessed against Netal, Inc., in the amount of at least $200,000.00, although the list of the twenty largest creditors filed by Netal, Inc., includes an IRS claim of $450,000.00.

The bonding company, International Fidelity Insurance Company, has received claims on the bond for various projects in the amount of approximately $210,000.00. The corporate secretary of the debtor testified that, on at least one ongoing bonded project, the remaining accounts receivable are less than the remaining accounts payable. One can infer from such a statement that the bonding company has a good possibility of receiving claims on that and other projects. The bonding company is the holder of an indemnity agreement and trust account agreement entered into with the debtor. As a result of such agreements, the bonding company has an interest in assets of the debtor, including contract rights and accounts receivable arising from those bonded contracts.

The sum of the interests of Mutual of Omaha Bank, the Internal Revenue Service, and the bonding company in the cash collateral claimed as an asset by debtor equals at least $1,300,000.00.

-2-

The debtor asserts that it has accounts receivable in the approximate amount of $800,000.00 and ongoing contracted projects which will generate approximately $1,100,000.00. To complete those projects and receive the revenue from the projects, the debtor needs to use more than $800,000.00 of the currently existing accounts receivable and the ongoing accounts receivable to be generated as the work is completed. The debtor argues that the total of $1,900,000.00 in currently existing accounts receivable and future project revenue, less contract completion expenses of approximately $800,000.00, leaves almost $1,100,000.00 available to the creditors that have an interest in the cash collateral. That current and future balance, according to the debtor, should be sufficient adequate protection for the use of the $800,000.00 in cash collateral, especially since the debtor is offering to use some of the cash collateral to make monthly payments to the Internal Revenue Service and to Mutual of Omaha Bank in the total approximate amount of $25,000.00 per month. However, the evidence also shows that at least $400,000.00 of the current accounts receivable belong to Netal, Inc. In addition, of the contracts included in the calculations by the debtor, $691,000.00 of revenue are related to contracts held by Netal, Inc. To complete those contracts would take $359,000.00 in expense payments.

Although the corporate secretary of the debtor testified that he and his brother own 100% of both companies and plan to treat the accounts receivable and contract rights of both companies as if they belonged to the debtor, the companies are separate corporate entities. No evidence was presented at the hearing that the debtor has been authorized by Netal, Inc., a related but separate corporate entity, to use its accounts receivable and/or its contract revenues. Pre-petition practices with regard to related corporate entities may, occasionally, work without the formality of documentation, but when the corporations, with their separate assets and liabilities, are in bankruptcy, the pre-petition practices must cease until properly authorized both by the corporate boards or shareholders and by the court, after notice to all interested parties. The fact that Netal, Inc., has now filed bankruptcy and this debtor has filed a motion to consolidate the estates for administrative or substantive purposes does not change the situation. There is no corporate documentation in the record or the bankruptcy files of either debtor which indicates corporate authority for consolidation or use of accounts receivables or proceeds of contract rights of Netal, Inc., by this debtor. In addition, assuming the creditors of Netal, Inc., receive notice of the motion filed in this debtor's case, those creditors have until November 25, 2009, to object.

Concerning Netal, Inc., there are no schedules of assets and liabilities on file, so it cannot be determined if the cash collateral of Netal, Inc., is encumbered by any liens in addition to the IRS assessment. Although not in the record, it can be assumed that the Internal Revenue Service assessment attaches to the accounts receivable and contract rights of Netal, Inc.

Because the debtor, as of this time, does not have the right to use the assets of Netal, Inc., as adequate protection for the interest of this debtor's creditors in this debtor's cash collateral, Netal's accounts receivables and future contract proceeds must be ignored for the purpose of this ruling. Removing the accounts receivable and future contract revenues of Netal, Inc., from the fund available to protect the interests of Mutual of Omaha Bank, the Internal Revenue Service, and the bonding company in the cash collateral leaves those entities with far less protection for their interests than is suggested by the debtor.

In addition to the problems discussed above, the debtor has not included in its 10-week income and expense projections (Exs. A and B to Fil. #66) any payments to Wells Fargo Equipment Finance, Inc., an entity that holds a perfected security interest in much of the equipment used by the debtor. Pre-petition payments to Wells Fargo, which serviced only the interest, were $24,000.00 per month. The corporate secretary acknowledged that there had been no agreement entered into between the debtor and Wells Fargo concerning adequate protection of the interest of Wells Fargo going forward and no payments have been made to Wells Fargo since the petition date.

The Bankruptcy Code, at 11 U.S.C. § 363, permits the debtor to use cash collateral without consent of those with an interest in it only if that interest is adequately protected. Case law provides that the standard to be used for determining whether to allow the use of cash collateral includes the following:

(1)    The court must establish the value of the secured creditor's interest;

(2)    The court must identify risk to the secured creditor's value resulting from the debtor's request for use of cash collateral; and

(3)    The court must determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

Martin v. United States (In re Martin), 761 F.2d 472, 476-77 (8th Cir. 1985).

The risk to the creditors' interest in the cash collateral is that, for one reason or another, the expenses to complete the projects which are to generate future revenue will exceed the future revenue generated. In addition, it is now November 6, 2009. These projects involve earthmoving. Weather in the Omaha, Nebraska, area from this date forward for several months is variable and could cause the projects to shut down for the winter prior to their completion. Such an eventuality would reduce the expense for payroll and fuel, but not reduce any overhead expenses. Such an eventuality would also reduce the likelihood that the debtor would receive the projected revenues during the 10-week period projected as necessary to complete the projects.

When the current accounts receivable and the future project revenues attributable to Netal, Inc., are deducted from the totals used by the debtor in its proposition to the creditors and the court, it is clear that the creditors' interest in the cash collateral far exceeds the ability of the debtor to protect that interest. In other words, the debtor wants to use all of the cash available now, and into the future, with no assurance that it has the ability to generate equivalent amounts to protect the status quo.

Under these circumstances, particularly with the lack of corporate documentation, the lack of approval of the creditors of Netal, Inc., and the total lack of evidence concerning the assets and liabilities of Netal, Inc., the interest of the creditors of this estate in the current and future cash collateral cannot be protected. Therefore, these motions to use cash collateral are denied.

IT IS ORDERED: The debtor's motion to use cash collateral (Fil. #50) and amended motion to use cash collateral (Fil. #52) are denied.

DATED: November 6, 2009.

BY THE COURT:

/s/ Timothy J. Mahoney
U.S. Bankruptcy Judge

Notice given by the Court to:
    *David Hicks
    David Skalka
    Douglas Quinn
    Laurie Barrett
    James Overcash
    Maynard Weinberg
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.